IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| CYNTHIA FLOWERS and KASIA PAWELEK, | ) | CIVIL ACTION NO. 9:22-CV-2124-BHH-MGB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | SUMMONS |
| | ) | (Jury Trial Demanded) |
| UNIVERSITY OF SOUTH CAROLINA, BEAUFORT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## INTRODUCTION

1.      Plaintiffs bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C., §§ 2000e – 16(c) (hereinafter "Title VII").

## PARTIES

2.      Plaintiff Cynthia Flowers is a citizen and resident of Beaufort County, South Carolina, who was employed by the defendant in Beaufort County, South Carolina. Plaintiff Kasia Pawelek is a citizen and resident of Beaufort County, South Carolina, and is employed by the defendant in Beaufort County, South Carolina.

3.      Defendant, University of South Carolina, Beaufort (hereinafter "USCB" or "Defendant"), is properly sued under 42 U.S.C., §§ 2000e – 16(c).  Defendant is an "employer" engaged in an industry affecting commerce within the meaning of 42 U.S.C. §2000e, and does now employ, and at all times relevant did employ, more than 100 employees.

## JURISDICTION AND TRIAL BY JURY

4.       Plaintiffs have exhausted their administrative remedies. This suit is timely filed

within 120 days of the receipt of the Notice of Right to Sue final decision. The decisions were issued on March 9, 2022; however, they were not properly returned to the plaintiffs in a timely fashion. Plaintiffs received the notice of right to sue from the South Carolina Human Affairs commission via email on June 30, 2022. Those decisions are attached hereto as Exhibit 1. This complaint is filed within 120 days of the date of the decisions.

5. This Court's jurisdiction arises under 42 U.S.C. §2000e-2 and under 28 U.S.C. §1331 and §1332. Plaintiffs request a trial by jury of all matters which may be submitted to a jury.

## STATEMENT OF FACTS

6. Plaintiffs have properly exhausted their administrative remedies and have commenced this action within one hundred twenty (120) days of their receipt of the Right to Sue letters. Plaintiffs incorporate by reference the facts related in the charges of discrimination made by both Plaintiffs. Those charges are attached hereto as Exhibits 2 and 3, respectively. Plaintiffs incorporate by reference into this Complaint, as if repeated here verbatim, these documents and the allegations therein. At all times during the course of their employment with Defendant, Plaintiffs reported to the proper agents of Defendant the unlawful activities of which they complain herein. Defendant did not take any meaningful actions to assist Plaintiffs by remedying these complaints. Rather the defendant — through its management and human resource personnel — engaged in activities designed to create pretexts for the unlawful activities of which Plaintiffs complained. Simultaneously, Defendant — through its management and human resource personnel — contributed to, and worsened, the hostile environment to which each of the Plaintiffs were subjected.

7. Plaintiff Flowers came to be employed by defendant as her first job out of graduate school. Initially, Flowers was hired as a full-time instructor in 2006 in the Mathematics Department of USCB. Plaintiff Pawelek was hired in 2012 as an assistant professor with a tenure track. Pawelek is now a tenured associate professor with USCB.

8. During the course of their employment with USCB, a higher-ranking professor in the Mathematics Department, Akira Iwasa, a tenured associate professor, had supervisory powers over both Plaintiffs, including the ability to effect performance reviews, promotional opportunities, and the ability to vote on the tenure of Plaintiff Pawelek.

9. Iwasa had been with the university since the early 2000s. Upon information and belief, multiple female employees of USCB have made complaints of discrimination and harassment regarding the actions of Iwasa during his time with the university.

## SPECIFIC ALLEGATIONS AS TO PLAINTIFF FLOWERS

10. In the spring of 2009, Flowers was pregnant with a baby girl. At that time, she began experiencing odd treatment by Iwasa. Iwasa made offensive comments regarding Flowers' pregnancy during a social event, comments that were inappropriate, demeaning, and bully-like. Iwasa had been assigned to a team to track student's progress, and he harassed Flowers regarding the results of a test to the point that Flowers was concerned about the physical effect on Flowers' pregnancy. Flowers did not complain to USCB about the discriminatory nature of these actions specifically at that time. The harassment continued to build, became more and more odd, made Flowers increasingly uncomfortable, and made Flowers fear for her wellbeing. Flowers did, however, request assistance in dealing with Iwasa's threats toward her. Rather than deal with the problem appropriately, Defendant took the unbelievable action of assigning an armed guard to

accompany and guard Flowers while she was on campus at the same time as Iwasa.

11. Over the following months, Iwasa's behavior continued and got worse. About a year later, Flowers' superior, Charlie Keith, called her into his office to tell her to leave campus because Iwasa made threatening comments about her during a meeting. Keith was concerned that Iwasa was obsessed with Flowers and that he may try to physically harm her. Flowers wrote a letter about these events dated January 31, 2010, and sent it to the upper levels of Defendant's management in hopes that the letter might provoke proper handling of the situation. No actions were taken by USCB, and Flowers was left to deal with the situation on her own.

12. Flowers became pregnant again in 2011, with another baby girl. She was allowed to take maternity leave and she worked half-time during the 2011-12 school year, even though the policy regarding maternity leave was deliberately concealed from her by Defendant during her first pregnancy.

13. In the Spring of 2013, Flowers declined to renew her contract based on Defendant's failure to properly address Iwasa's behavior.

14. In 2019, Flowers participated in an investigation into the sexual harassment claims related to Iwasa. Flowers was contacted by the Dean of Math and Science at USCB. He warned Flowers that Iwasa may try to contact her because there were "old" and "odd" complaints that had been investigated and reported to Iwasa, and further, that Iwasa may attempt to contact or harass Flowers in an effort to pressure Flowers into holding back details related to Iwasa's behavior toward Flowers. Flowers was also informed that Iwasa was being terminated, and that USCB wanted to rehire Flowers for an instructor position. Flowers needed the job to help support her two young girls but would not consider undertaking new employment with USCB unless Iwasa

was gone. In June of 2019, Flowers was told definitively that Iwasa had been removed from his position and that he was not allowed on any USCB campus.

15. Upon hearing this news, Flowers accepted Defendant's new job offer and returned to her position as an instructor with USCB.

16. On or about August 21, 2019, Flowers saw Iwasa on the Beaufort campus of USCB. This greatly distressed Flowers and made Flowers immediately fear for her safety. Flowers reported the Iwasa sighting to her department chair, and further advised that a condition of her re-employment was that Iwasa was no longer employed by USCB. The department chair advised that Iwasa was still employed by USCB, and further, that he was unaware of any Iwasa ban.

17. Thereafter, Flowers learned that, in fact, Iwasa had never been terminated or banned from USCB campus, but rather, that he had been given a different office.

18. Flowers was devastated and fearful about this but could not leave her employment at that time and was forced to stay in her position and began teaching class on August 23, 2019. This was emotionally devastating to Flowers as it was common knowledge that Flowers was unwilling to work close to Iwasa, and further, Iwasa was well aware of Flowers' complaints and concerns. To try and protect Flowers from this dangerous situation, USCB again hired an armed security officer to accompany and protect Flowers – including to stand post outside her classroom door – when Flowers was on campus.

19. To compound their behavior, USCB management took action to paint Flowers as the cause of the turmoil related to Iwasa's at USCB. This was done to retaliate against Flowers and to punish her for complaining. Ultimately, Iwasa was banned from campus on the days that Flowers was to be on campus teaching. Further, Flowers was assigned classrooms for her courses

that were physically distanced from Iwasa. Iwasa knew that these actions were taken by USCB in part due to Flowers' complaints, and that made Iwasa extremely angry with Flowers. In October of 2019, Iwasa's faculty mailbox was taken from him, and Flowers' name was replaced on the same mailbox. Flowers knew Iwasa would see that his name had been replaced with Flowers, and further, that this would make Iwasa even more enraged. However, Flowers took some comfort that Iwasa was now banned from campus on the days that Flowers was there.

20. Subsequently, Flowers discovered that Iwasa was consistently on campus during his "banned" times, and Flowers continued to complain through her chain of command about his presence, her fear, and the emotional toll of being required to have a constant armed escort to perform her job.

21. Flowers was subsequently informed that her employment would not be renewed for the spring 2020 semester.

## **SPECIFIC ALLEGATIONS AS TO PLAINTIFF PAWELEK**

22. In 2015, Iwasa began harassing Plaintiff Pawelek regarding matters involving research and publishing of articles. Pawelek was unaware of the complaints Plaintiff Flowers had made regarding Iwasa at that time. The harassment included obsessively reviewing, editing, challenging, and critiquing Pawelek's research papers. Specifically, Iwasa would send late night emails filled with voluminous list of critiques related to Pawelek's work, challenges to Pawelek's sources and calculations, and obsessive questions regarding methods used by Pawelek.

23. Pawelek reported the acts of Iwasa to her Department Chair, to the Vice Chancellor, and to the Chancellor. Based on these complaints, USCB leadership wrote Iwasa a letter asking him to stop his harmful, discriminatory behavior. Unfortunately, the letter was not effective, and

USCB knew it was not effective.

24.     Instead of ending his harassment campaign, Iwasa retaliated against Pawelek by obsessively writing to journal editors, collaborators, and other experts in Pawelek's field of study to try and discredit and smear Pawelek's research and reputation, which took years of rigorous study and research to build.

25.     In 2018, Pawelek submitted a formal complaint of discrimination to the USC (Columbia, SC) Equal Employment Opportunity Office. The investigation into the complaint lasted several months and involved multiple witnesses – including Plaintiff Flowers – and in March of 2019, the EEO office issued a finding that Iwasa had discriminated and retaliated against Pawelek.

26.     USCB leadership took minimal remedial steps based on these finding. While Iwasa was moved to a different campus and was given restrictions on his interactions with Pawelek, Iwasa continued to write obsessive and defamatory letters to individuals in Pawelek's field of study to retaliate against Pawelek for complaining about Iwasa.

27.     The so-called "campus restrictions" on Iwasa – if they were ever formally in place – were abruptly removed by the Vice Chancellor of Academic Affairs, Dr. Eric Skipper for the spring 2020. Neither Pawelek nor Plaintiff Flowers were informed by anyone of the changes in Iwasa's restrictions.

28.     When Pawelek ultimately learned that Iwasa's restrictions were removed, she feared for her personal safety and even more retaliation by Iwasa. Pawelek had severe anxiety and panic attacks associated with the same.

29.      To retaliate and punish Pawelek for complaining about Iwasa, Pawelek was denied

promotion to full tenured professor. A male colleague was also denied at the same time. Both Pawelek and the male colleague applied for reconsideration. The male colleague with equal qualifications received the reconsideration. Pawelek was again denied in April 2019 because of "outside activities" which was nothing more than code for Pawelek making legitimate and appropriate complaints about Iwasa. In April of 2020, a new letter denying the promotion was issued that removed the "outside activities" portion of the reasoning. The male colleague did not complain of, nor was he subject to, any harassment or retaliation during his time with USCB.

## AS TO BOTH PLAINTIFFS

30. The misconduct of Dr. Iwasa constitutes the misconduct of the defendant, was ratified by the defendant, and was encouraged and protected by the defendant's management and human resources employees. An unlawful hostile environment was created and maintained which caused severe emotional distress and humiliation to the plaintiffs.

31. Plaintiffs were wrongfully discriminated against on the basis of their sex and retaliated against by USCB throughout the course of their employment because they engaged in protected activity. *Inter alia,* plaintiffs' protected activities included: seeking maternity leave; complaining to USCB management about Iwasa's discriminatory and retaliatory actions; filings of formal complaints and charges of discrimination and retaliation; complaining to the defendant's EEO office; and their participation in the administrative process, including the investigation by USC EEO.

32. The defendant took adverse employment actions against the plaintiffs in violation of 42 U.S.C. §§ 2000e, et seq., and thereby proximately caused damages, both actual and punitive, to the plaintiffs.

33. Further, the defendant has knowingly allowed the plaintiffs to be subjected to sexual harassment/retaliation in the workplace in violation of 42 U.S.C. §§ 2000e, et seq., and thereby proximately caused damages, both actual and punitive, to the plaintiffs.

### FOR A FIRST CAUSE OF ACTION
### (Hostile Work Environment in Violation of Title VII)

34. Plaintiffs reaver all foregoing paragraphs as if set forth fully herein.

35. Defendant discriminatorily failed to protect Plaintiffs from the wrongful acts of Iwasa in violation of 42 U.S.C. §§ 2000e-3.

36. Defendant discriminatorily failed to provide Plaintiffs with a safe and harassment free workplace in violation of 42 U.S.C. §§ 2000e-3, instead allowing a known harasser to consistently harm Plaintiffs.

37. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiffs of equal employment opportunities guaranteed by law by unlawfully discriminating against Plaintiffs on account of their gender, with respect to the terms, conditions and privileges of their employment, including depriving them of employment opportunities and a safe and harassment free working environment; all in violation of Title VII of the Civil Rights Act of 1964.

38. The actions and omissions of the Defendant were malicious and in bad faith and proximately caused actual and punitive damages to the Plaintiff.

### FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

39. Plaintiffs reaver all paragraphs as if set forth fully herein.

40. By acts and practices alleged above, and by other and related acts and practices,

Defendant has willfully retaliated against Plaintiffs by taking adverse and harmful actions against Plaintiffs for their lawful and protected reports of harassment and discrimination, as well as for their participation in investigations into the complaints against Iwasa; all in violation of Title VII of the Civil Rights Act of 1964.

41. The actions and omissions of the Defendant were malicious and in bad faith and proximately caused actual and punitive damages to the Plaintiffs.

## FOR A THIRD CAUSE OF ACTION
### (Negligence, Gross Negligence, Negligent Supervision/Retention)

42. Plaintiffs reaver all paragraphs as if set forth fully herein.

43. Defendant had a duty to act reasonably in hiring, training, and retaining employees, specifically Iwasa, and to promulgate and enforce rules and regulations to ensure its employees were reasonably safe.

44. Defendant was negligent in the supervision and retention of Iwasa, which negligence caused or contributed to the injuries of Plaintiffs.

45. Defendant had a duty to act reasonably in investigating complaints of harassment and hostile work environment and to take reasonable steps to prevent discriminatory and retaliatory acts against Plaintiffs.

46. That but/for Defendant's negligently retaining Iwasa after multiple complaints of outrageous and illegal activities, Plaintiffs would not have been harmed.

47. Defendant was negligent, grossly negligent, careless, reckless, willful and wanton in continuing to employ Iwasa, giving him access to the Plaintiffs, and that conduct directly and proximately caused the injuries and losses of Plaintiffs as set forth herein.

## FOR A FOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

48. Plaintiffs reaver all paragraphs as if set forth fully herein.

49. Defendant has intentionally caused emotional distress to Plaintiffs by the foregoing acts.

50. Such conduct by the Defendant was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as utterly intolerable in a civilized society.

51. By the foregoing acts of the Defendant, the Plaintiffs have suffered severe emotional distress, causing Plaintiffs damages, both actual and exemplary and in an amount to be determined by a jury.

WHEREFORE, Plaintiffs respectfully pray that this Court enter judgment against the Defendant, as follows:

1. For all relief available under Title VII;

2. For the promotion of Plaintiff Pawelek to the Full Professor position which she was wrongfully denied;

3. For compensatory damages;

4. For a declaratory judgment that the defendant violated rights secured to the plaintiffs by Title VII;

5. For the Plaintiffs' costs and a reasonable attorney's fee, pursuant to all applicable provisions of law, and for such other and further relief as the Court deems proper, just and equitable.

                                  TWENGE + TWOMBLEY LAW FIRM

BY:    S/J. Ashley Twombley
           J. Ashley Twombley (ID# 9388)
           311 Carteret Street
           Beaufort, SC 29902
           (843) 982-0100
           twombley@twlawfirm.com

           Allan R. Holmes (ID#1925)
           Timothy O. Lewis (ID# 9864)
           GIBBS & HOLMES
           171 Church Street, Suite 110
           P.O. Box 938
           Charleston, S.C.   29402
           (843) 722-0033
           aholmes@gibbs-holmes.com
           timolewis@gibbs-holmes.com

           ATTORNEYS FOR THE PLAINTIFFS

Beaufort, South Carolina

July 5, 2022