# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Cynthia Flowers and Kasia Pawelek, ) | Civil Action No. 9:22-02124-BHH-MGB |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| University of South Carolina, Beaufort, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiffs initially filed this employment discrimination case on July 5, 2022, alleging retaliation and hostile work environment in violation of Title VII of the Civil Rights Act ("Title VII"), and negligence, gross negligence, negligent supervision/retention, and intentional infliction of emotional distress in violation of South Carolina state law. (Dkt. No. 1.) Plaintiffs filed an Amended Complaint on August 22, 2022, and a Second Amended Complaint on November 17, 2022. (Dkt. Nos. 6, 17.) Plaintiff's Second Amended Complaint alleges only retaliation and hostile work environment claims. (Dkt. No. 17.)

This matter is now before the Court upon Defendant's Motion for Judgment on the Pleadings. (Dkt. No. 20). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's motion (Dkt. No. 20) be **GRANTED IN PART AND DENIED IN PART**.

1

# BACKGROUND

Plaintiffs, both female, have been employed by Defendant. (Dkt. No. 17 at 3.) Plaintiff Flowers was hired in 2006 as a full-time Mathematics instructor. (*Id*.) Plaintiff Pawelek was hired in 2012 as an assistant professor, and she is now a tenured associate professor. (*Id*.) The Second Amended Complaint alleges that Plaintiffs were harassed and retaliated against by a higher-ranking professor in the Mathematics Department, Akira Iwasa. (*Id*.) Plaintiffs claim that Iwasa's misconduct was ratified by Defendant and "was encouraged and protected by Defendant's management and human resources employees." (*Id*. at 10–11.) Plaintiffs allege that this created an unlawful hostile work environment. (*Id*. at 11.) Plaintiffs further allege that they were retaliated against throughout the course of their employment for engaging in protected activity. (*Id*.) Accordingly, they filed the instant civil action alleging hostile work environment and retaliation in violation of Title VII. (*Id*. at 11–13.)

   I.    **Allegations Specific to Plaintiff Flowers**

The Second Amended Complaint states that Iwasa began working for Defendant in the early 2000s. (*Id*. at 3.) Plaintiff Flowers allegedly experienced odd treatment by Iwasa after she became pregnant in the spring of 2009. (*Id*.) The Second Amended Complaint explains that Iwasa "made offensive comments regarding Flowers' pregnancy" and harassed her "to the point that Flowers was concerned about the physical effect the harassment might take on [her] pregnancy." (*Id*.) Further, the Second Amended Complaint claims that "the harassment continued to build, became more and more odd, made Flowers increasingly uncomfortable, and made Flowers fear for her wellbeing." (*Id*.) Plaintiff Flowers eventually asked for help in dealing with Iwasa. (*Id*.) She alleges that "[r]ather

than deal with the problem appropriately, Defendant took the unbelievable action of hiring an armed security guard to accompany, and guard, Flowers while she was on campus at the same time as Iwasa." (*Id*. at 3–4.) Nonetheless, Plaintiff Flowers claims that "Iwasa's behavior continued and became worse." (*Id*. at 4.)

The Second Amended Complaint states that Plaintiff Flowers was called into the office of one of her superiors, Charlie Keith, in early 2010. (*Id*.) At that time, Keith told Plaintiff Flowers to "leave campus" because "Iwasa made threatening comments about her during a faculty meeting" and Keith was "concerned that Iwasa was obsessed with Flowers and that he may try to physically harm her." (*Id*.) The Second Amended Complaint explains that Plaintiff Flowers "wrote a letter about these events dated January 31, 2010 and sent it to Defendant's management in hope that the letter might provoke proper handling of the situation," but no action was taken. (*Id*.)

In 2011, Plaintiff Flowers again became pregnant. (*Id*.) She claims that for this pregnancy "she was allowed to take maternity leave and [] worked half-time during the 2011-12 school year" but that "the policy regarding maternity leave was deliberately concealed from her by Defendant during her first pregnancy." (*Id*.) Plaintiff Flowers further claims that Iwasa's odd behavior persisted through the spring of 2013, and that she continued to ask for help from Defendant. (*Id*.) Plaintiff Flowers explains that she "declined to renew her contract" in late spring of 2013 due to "Defendant's failure to meaningfully address Iwasa's behavior." (*Id*.)

Plaintiff Flowers claims that in 2019 she was asked to participate in an investigation into sexual harassment claims against Iwasa, even though she was no longer employed by Defendant. (*Id*.) According to the Second Amended Complaint, Defendant's Dean of Math

3

and Sciences contacted Plaintiff Flowers to warn her that Iwasa may reach out to her in an effort to persuade her to "hold[] back details" about his behavior. (*Id*.) The Dean of Math and Sciences also informed her that Iwasa was being terminated, and that Defendant would like to rehire Plaintiff Flowers. (*Id*. at 5.) Plaintiff Flowers claims that she accepted Defendant's job offer after confirming that Iwasa had been terminated and was no longer allowed on Defendant's campus. (*Id*.)

According to the Second Amended Complaint, Plaintiff Flowers saw Iwasa on Defendant's Beaufort campus on August 21, 2019. (*Id*.) He "stared at Flowers in a menacing way and made gestures to Flowers designed to make her fear for her life." (*Id*.) Plaintiff Flowers reported this sighting to her department chair and explained that she had accepted Defendant's offer of employment on the condition that Iwasa was terminated. (*Id*.) Plaintiff Flowers claims that her department chair "advised that Iwasa was still employed by USCB, and further, that she was unaware of any ban that would prohibit Iwasa from being on a USCB campus." (*Id*.) Plaintiff Flowers then learned that Iwasa had not been terminated but had instead been given a different office. (*Id*.)

Plaintiff Flowers claims that she was devastated and fearful about this turn of events but felt "unable to simply quit" because she was "teaching students in classes that were well underway." (*Id*.) She further claims that Iwasa knew of her complaints against him. (*Id*. at 6.)

The Second Amended Complaint explains that Plaintiff Flowers continued working for Defendant. (*Id*.) To protect Plaintiff Flowers from Iwasa, Defendant again hired an armed security guard who "walked with Flowers around campus, and stood post outside her classroom door as she tried to teach." (*Id*.)

4

Plaintiff Flowers claims that Defendant then retaliated against her by "paint[ing] [her] as the cause of the turmoil related to Iwasa[]." (*Id*.) According to the Second Amended Complaint, Plaintiff Flowers nonetheless continued to complain about Iwasa until he was banned from campus on the days that Plaintiff Flowers was teaching, and he was physically distanced from where Plaintiff Flowers was teaching. (*Id*.) Plaintiff Flowers claims that Iwasa knew these measures were taken as a result of her complaints against him, which made him "extremely angry." (*Id*.) She alleges that this anger was exacerbated by Defendant taking Iwasa's "favorably placed faculty mailbox" away from him and giving it to Plaintiff Flowers. (*Id*. at 7.)

Plaintiff Flowers claims that, although Defendant banned Iwasa from campus on days when she was working, Iwasa violated this ban. (*Id*.) Specifically, Plaintiff Flowers alleges that Iwasa was seen leaving campus buildings on days when she was teaching and that his car was parked near hers on days when he was not supposed to be on campus. (*Id*.) Plaintiff Flowers claims that Defendant knew that Iwasa was violating the ban, but did nothing about it. (*Id*.) She claims that she told the Dean of Defendant's Beaufort campus, and that he pulled video footage confirming Iwasa's violations. (*Id*.) Plaintiff Flowers alleges that Defendant said the situation would be addressed but did not take action. (*Id*.)

According to the Second Amended Complaint, Plaintiff Flowers later learned that Iwasa was living in his office on campus. (*Id*.) Because Defendant did not take action to remove Iwasa from campus or otherwise prevent him from presiding on campus when Plaintiff Flowers was teaching, Plaintiff Flowers contacted the Federal Bureau of Investigations ("FBI"). (*Id*. at 8.) She claims that she contacted the FBI on two occasions in the fall of 2019. (*Id*.) The Second Amended Complaint explains that the FBI then

contacted Defendant. (*Id*.) Plaintiff Flowers states that she told Defendant she contacted the FBI because she feared for her life. (*Id*.) She claims that she "lived in constant fear of Iwasa during the entirety of the fall 2019 semester because of the failures of USCB to act appropriately to protect her from retaliation." (*Id*.) According to the Second Amended Complaint, Plaintiff Flowers "was subsequently informed that her employment would not be renewed for the spring 2020 semester." (*Id*.)

## II.     Allegations Specific to Plaintiff Pawelek

The Second Amended Complaint alleges that Iwasa began harassing Plaintiff Pawelek in 2015. (*Id*. at 8.) More specifically, the Second Amended Complaint states that Iwasa was "obsessively reviewing, fanatically editing, compulsively challenging, and neurotically critiquing Pawelek's research papers." (*Id*.) Iwasa would send Plaintiff Pawelek late night and early morning emails with "voluminous lists of outrageous critiques related to Pawelek's work, neurotic challenges to Pawelek's sources and calculations, and obsessive questions regarding methods used by Pawelek." (*Id*.) Plaintiff Pawelek reported this behavior to her Department Chair, to the Vice Chancellor, and to the Chancellor. (*Id*. at 9.) Defendant then wrote Iwasa a letter asking him to stop. (*Id*.) Plaintiff Pawelek alleges that this "letter was not effective and USCB knew it was not effective." (*Id*.)

Plaintiff Pawelek claims that Iwasa retaliated against her after she reported him. (*Id*.) According to the Second Amended Complaint, Iwasa began "obsessively writing to journal editors, collaborators, and other experts in Pawelek's field of study to try and discredit and smear Pawelek's research and reputation." (*Id*.) Plaintiff Pawelek claims that she again reported Iwasa's behavior but "USCB did nothing, and the behavior continued" into 2020 and 2021. (*Id*.) She claims that, as a result, she "was required to continue to work

in fear and further do significant remedial and unnecessary work on articles that Iwasa wrongfully criticized in retaliation for her complaints." (*Id*.)

The Second Amended Complaint explains that Plaintiff Pawelek "submitted a formal complaint of discrimination to the USC (Columbia, SC) Equal Employment Opportunity Office" in 2018. (*Id*.) In March of 2019, the Equal Employment Opportunity Office issued a finding that Iwasa discriminated and retaliated against Pawelek. (*Id*.) However, Plaintiff Pawelek claims that "USCB leadership took minimal remedial steps based on th[is] finding." (*Id*.) She notes that Iwasa "was moved to a different campus and given restrictions on his interactions with Pawelek," but he "continued to write obsessive and defamatory letters to individuals in Pawelek's field of study to retaliate against [her] . . . ." (*Id*.) Further, Plaintiff Pawelek (like Plaintiff Flowers) claims that Iwasa did not adhere to the restrictions put in place and "was consistently on campus during times and dates that were restricted during the fall semester of 2019." (*Id*. at 10.) She claims that "USCB leadership was well aware of this, and had video to prove it, yet no actions were taken to prevent the consistent egress." (*Id*.) According to the Second Amended Complaint, the restrictions on Iwasa were then "abruptly removed by the Vice Chancellor of Academic Affairs, Dr. Eric Skipper" in the spring of 2020. (*Id*.) When Plaintiff Pawelek learned that the restrictions were removed, she experienced anxiety and panic attacks. (*Id*.)

Plaintiff Pawelek claims that she was denied a promotion to full tenure professor in retaliation for complaining about Iwasa. (*Id*.) She explains that a male colleague was also denied tenure at the same time as she was, and that both she and her colleague applied for reconsideration. (*Id*.) However, only her male colleague (with allegedly equal qualifications) was reconsidered, whereas Plaintiff Pawelek was again denied. (*Id*.)

7

Plaintiff Pawelek alleges that she received a denial letter in April 2019 that explained she was denied due to "outside activities." (*Id*.) Then, in April of 2020, she received a new letter that removed "outside activities" as a reason for which she was denied tenure. (*Id*.)

## **LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. Rule 12(c). Rule 12(c) motions "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *See Lewis v. Excel Mech., LLC*, 2:13-cv-281-PMD, 2013 WL 4585873, at * 1 (D.S.C. Aug. 28, 2013) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1368 (3d ed. 2010)). Courts follow "a fairly restrictive standard" in deciding Rule 12(c) motions, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *See Fitzhenry v. Indep. Order of Foresters*, No. 2:14-cv-3690-DCN, 2015 WL 3711287 (D.S.C. June 15, 2015) (internal citations omitted).

A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Rule 12(b)(6) permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted," and tests the legal sufficiency of the complaint pursuant to Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). It "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *See*

*Doe 202a v. Cannon*, No. 2:16-cv-00530-RMG, 2018 WL 317818, at *1 (D.S.C. Jan. 8, 2018) (internal citations omitted).

Rule 12(c) motions limit the court's review to the pleadings and "any documents and exhibits attached to and incorporated into the pleadings." *See Hughes v. Med. Depot, Inc.*, No. 2:18-cv-2187-RMG, 2019 WL 1772401, at *1 (D.S.C. Apr. 23, 2019) (internal citations omitted). The court "may also consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 179–80 (4th Cir. 2009). In reviewing a complaint under Rule 12(c), the court must accept as true all factual allegations contained in the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court need not accept "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

## **DISCUSSION**

### I. Title VII Claims

#### A. Hostile Work Environment

Defendant first contends that Plaintiffs' hostile work environment claims should be dismissed because Plaintiffs failed to file charges of discrimination within the 300-day statute of limitations period and because the Second Amended Complaint fails to plead facts that support a valid hostile work environment claim. (Dkt. No. 20-1 at 5.) Plaintiffs

9

respond that these contentions lack merit. (Dkt. No. 25 at 3–13.) The undersigned considers these arguments, below.

### 1. Timeliness

Title VII requires that a plaintiff exhaust her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing suit. *See Sydnor v. Fairfax Cnty, Va.*, 681 F.3d 591, 593 (4th Cir. 2012). A plaintiff must file such charge within 300 days of the alleged adverse employment action and must then file suit in court within ninety days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e–5(e)(1), (f)(1). However, if a plaintiff alleges a continuing violation, the 300-day period may be extended. This limited exception applies "to claims based upon a defendant's ongoing policy or pattern of discrimination rather than discrete acts of discrimination." *Hill v. Hampstead Lester Morton Ct. Partners LP*, 581 F. App'x 178, 181 (4th Cir. 2014) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219–20 (4th Cir. 2007); *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)).

The Supreme Court considered the continuing violation doctrine as it applies to Title VII claims in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002). In doing so, the Supreme Court distinguished between "discrete" discriminatory or retaliatory acts such as "termination, failure to promote, denial of transfer, or refusal to hire[,]" and hostile work environment claims, whose "very nature involves repeated conduct." *Id*. The discrete acts of discrimination and retaliation are considered to have "occurred" on the day they "happened." *Id.* at 110, 114. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice" and "starts a new clock for filing charges alleging that

act." *Id.* at 113–14 (internal quotation omitted). A discrete discriminatory act is not actionable if time-barred, even if it relates to acts that are timely. *Id.* at 113. However, "in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* at 115. Instead, "a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117 (internal quotation omitted). Therefore, while discrete discriminatory or retaliatory acts are time-barred if not filed within the statutory period, a hostile work environment claim is timely "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122; *see also Balas v. Huntington Ingalls Indus., Inc.*, No. 2:11-cv-347, 2011 WL 4478864, at *3 (E.D. Va. Sept. 26, 2011) ("A hostile work environment constitutes a continuing violation, whereas termination or failure to promote are discrete acts which must be raised within 300 days.").

Here, Plaintiffs' EEOC charges are attached to the Second Amended Complaint. (Dkt. Nos. 17-2, 17-3.) Plaintiff Flowers' charge is dated January 30, 2020. (Dkt. No. 17-2 at 4.) Plaintiff Pawelek's charge is dated January 29, 2020. (Dkt. No. 17-3 at 4.) Also attached to the Second Amended Complaint are Plaintiffs' right-to-sue letters, both dated July 25, 2022. (Dkt. No. 17-1 at 1, 4.)

As to Plaintiff Flowers, Defendant contends that "a qualifying action contributing to the purported [hostile work environment] allegation must have occurred within 300 days of January 30, 2020—that is, after April 5, 2019." (Dkt. No. 20-1 at 6.) Defendant argues that Plaintiff Flowers has not identified a qualifying action that occurred after April 5, 2019. (*Id.*) Because Plaintiff Flowers was not employed by Defendant during the summer,

11

Defendant asserts that "to state a timely [hostile work environment] claim, Flowers must identify an act contributing to her [hostile work environment] claim that occurred during the fall 2019 term." (*Id*.) Defendant contends that she has not done so. (*Id*.) The undersigned disagrees.

The Second Amended Complaint alleges that "[o]n or about August 21, 2019, Flowers saw Iwasa on the Beaufort campus of USCB, and Iwasa stared at Flowers in a menacing way and made gestures to Flowers designed to make her fear for her life." (Dkt. No. 17 at 5.) Thus, Plaintiff Flowers has alleged that at least one instance contributing to her hostile work environment claim within the relevant period. (*Id*.)

Defendant argues that this allegation cannot sustain Plaintiff Flowers' hostile work environment claim because it is an isolated incident not based on sex nor objectively severe or pervasive. (Dkt. No. 20-1 at 7.) However, all Plaintiff Flowers must allege at this early stage of the proceedings is at least one act supporting her allegation of a pattern of unlawful behavior by Iwasa that falls within the relevant period. *See Nat'l Railroad Passenger Corp.*, 536 U.S. at 122. Considering the allegations in the Second Amended Complaint in the light most favorable to Plaintiffs, the undersigned finds that Plaintiff Flowers has so alleged. As a result, the continuing violation doctrine saves her hostile work environment claim and the undersigned recommends that Defendant's motion (Dkt. No. 20) be denied on this point.

As for Plaintiff Pawelek, Defendants contend that she similarly has not identified a qualifying act that occurred on or after April 5, 2019. (Dkt. No. 20-1 at 7.) According to Defendant, the only act Plaintiff Pawelek alleges after this date is Defendant's failure to

promote her, which is a discrete act as opposed to a continuing violation. (*Id*.) The undersigned agrees.

Indeed, while the Second Amended Complaint alleges that Iwasa did not follow campus restrictions in the fall of 2019, it does not allege any actual harassment that could support Plaintiff Pawelek's hostile work environment claim. (Dkt. No. 17 at 9–10.) Rather, the Second Amended Complaint alleges that Plaintiff Pawelek was punished and retaliated against in April of 2019 when she was denied tenure. (*Id*. at 10.) However, as Defendant explains, this is a discrete act of discrimination that cannot save her hostile work environment claim. *See Nat'l Railroad Passenger Corp.*, 536 U.S. at 114–15 (explaining that "termination, failure to promote, denial of transfer, or refusal to hire[,]" are discrete acts, not continuing violations). Thus, the undersigned recommends that Defendant's motion (Dkt. No. 20) be granted as to this issue and that Plaintiff Pawelek's hostile work environment claim be dismissed as untimely.

### 2. Sufficiency of Factual Allegations

Defendant also argues that Plaintiffs' hostile work environment claims fail on the merits. (Dkt. No. 20-1 at 8–14.)[1] To avoid dismissal of their hostile work environment claims, Plaintiffs[2] must plead factual allegations sufficient to show that they experienced: "(1) unwelcome conduct, (2) based on . . . sex, that was (3) severe or pervasive enough to make [their] work environment hostile or abusive and [is] (4) imputable to . . .

---

[1] At the outset, the undersigned notes that Defendant's motion repeatedly asks the Court to draw factual inferences in its favor. The undersigned is required to construe Plaintiffs' allegations as true and consider them in the light most favorable to Plaintiffs at this early stage of the proceedings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] The undersigned addresses both Plaintiffs' hostile work environment claims here, in case the District Judge disagrees with the undersigned's recommendation that Plaintiff Pawelek's hostile work environment claim be dismissed as untimely.

[Defendant]." *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020) (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (en banc)).

A workplace is considered hostile when it is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (internal citations and quotation marks omitted.) The degree of hostility or abuse to which Plaintiffs were exposed must be determined by "examining the totality of the circumstances." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001) (referencing *Harris*, 510 U.S. at 23). "Relevant considerations "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Viewing all of Plaintiffs' allegations as true at this early stage of the proceedings, the undersigned finds that Plaintiffs have met this standard. Plaintiffs allege that Iwasa's conduct was unwelcome, and that he treated them differently on account of their sex. (*See supra* at 2–8; Dkt. No. 17 at 3–11.) Plaintiffs further claim that Iwasa's conduct was sufficiently severe or pervasive as to create an abusive work environment, and that such conduct is imputable to Defendant. (*See supra* at 2–8; Dkt. No. 17 at 3–11.) As such, Plaintiffs sufficiently allege Title VII hostile work environment claims and the undersigned therefore recommends that Defendant's motion (Dkt. No. 20) be denied on this point.

### B. Retaliation

Defendant next asserts that Plaintiffs have failed to allege valid Title VII retaliation claims. (Dkt. No. 20-1 at 14.) Title VII makes it unlawful for an employer to retaliate

14

against an employee because that individual opposed any practice made unlawful under Title VII, or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). Thus, to state valid retaliation claims, Plaintiffs must show: "(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d at 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)). However, at the pleading stage, Plaintiffs need not specifically articulate every element of their *prima facie* retaliation case. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Defendant contends that Plaintiffs fail to allege facts sufficient to state valid retaliation claims, even considering this more liberal pleading standard. The undersigned disagrees.

The Second Amended Complaint alleges that Plaintiff Flowers engaged in protected activity when she participated in an investigation into sexual harassment claims against Iwasa in 2019. (Dkt. No. 17 at 4.) The Second Amended Complaint further alleges that her employment contract was not renewed in the spring of 2020. (*Id*. at 8.) Viewing these allegations in the Plaintiff Flowers' favor, the undersigned finds she has stated a plausible claim of Title VII retaliation.

The Second Amended Complaint similarly alleges a plausible retaliation claim on behalf of Plaintiff Pawelek. Specifically, Plaintiff Pawelek claims that she engaged in protected activity when she "submitted a formal complaint of discrimination to the USC (Columbia, SC) Equal Employment Opportunity Office" and participated in the investigation that followed from her complaint. (*Id*. at 9.) She claims that she was then denied tenure (a promotion) in 2019. (*Id*. at 10.) Plaintiff Pawelek therefore alleges facts

15

that, when assumed true, support the elements of a plausible Title VII retaliation claim. (Id. at 9-10.) At this stage of the proceedings, the Federal Rules of Civil Procedure do not require anything more.

To the extent Defendant argues that Plaintiffs' retaliation claims fail because the temporal proximity between the alleged protected activity and adverse actions is too attenuated to prove causation, the undersigned notes that "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Again construing the facts alleged in the Second Amended Complaint as true and in the light most favorable to Plaintiffs, the Second Amended Complaint proffers facts that could be construed as evidence of a recurring retaliatory animus. (*See supra* at 2–8; Dkt. No. 17 at 3–11.) Thus, the undersigned recommends that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 20) be denied as to both Plaintiffs' retaliation claims.

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 20) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned recommends that Defendant's motion be granted as to Plaintiff Pawelek's hostile work environment claim and denied as to all other claims.

**IT IS SO RECOMMENDED**.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

February 6, 2023
Charleston, South Carolina

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).